UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case: 2:26-cr-20591
Assigned To : Goldsmith, Mark A.
Referral Judge: Grand, David R.
Assign. Date : 9/3/2026
Description: SEALED MATTER (LH)

v.

EMORY MATTHEWS

Defendant.
_______________________________/

VIO: 18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 982

**INDICTMENT**

**THE GRAND JURY CHARGES:**

**General Allegations**

At all times relevant to this Indictment:

**Medicare**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare included coverage under hospital insurance ("Part A") and medical insurance ("Part B"). Medicare Part B covered the costs of medical insurance, including physician, nursing, and other ancillary services not covered by Part A. The services at issue in this Indictment were covered by Part B.

4. CoventBridge Group ("CoventBridge") was the Unified Program Integrity Contractor ("UPIC") for the Midwestern Jurisdiction, which included the Eastern District of Michigan, and as such, it was the Medicare contractor charged with investigating fraud, waste, and abuse.

5. Physicians, nurse practitioners, and other health care providers that provided medical services that were to be reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers were required to submit applications in which the providers agreed to comply with all Medicare-related policies and procedures, rules, and regulations issued by CMS and its agents and contractors, including those governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.

6. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

7. Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services actually rendered as represented, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

8. To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form, to the Medicare contractor or carrier containing the required information appropriately identifying the provider, beneficiary, and services rendered.

9. Medicare covered services only if they were medically necessary and rendered as billed.

10. As part of enrollment with Medicare, an enrolling provider was required to certify that the information contained in the enrollment application was true, correct, and complete.

11. Medicare required that enrolling providers disclose, among other things: (i) all owners with 5% or greater ownership interest, regardless of whether that ownership is direct or indirect, (ii) all partners, regardless of percentage, and (iii) all managing employees, which included general managers, business managers, administrators, directors, medical directors, and other individuals who exercised operational or managerial control over, or who directly or indirectly conducted, the day-to-day operations of the provider.

12. Once enrolled, Medicare providers had a continuing obligation to disclose ownership and managing employee information, including whether there were any changes to the providers' ownership and/or managing employees, as well as any adverse legal actions, and a failure to do so could impact continuing Medicare eligibility.

13. Medicare also required that enrolling providers disclose any final adverse legal actions, including any federal felony convictions by any owner or managing employee of the provider, and any current or past suspension or exclusion imposed by HHS's Office of Inspector General.

**Relevant Entities**

14. New Beginnings Adult Center, Inc., ("New Beginnings") was a Michigan corporation, formed in or around June 2018, and located at 18594

Greenfield, Detroit, Michigan 48235. New Beginnings was enrolled as a participating provider with Medicare.

15. Oakview Adult Day Care Inc. ("Oakview") was a Michigan corporation, formed in or around September 2014, and located at 18966 Greenfield Road, Detroit, Michigan 48235. Oakview was dissolved in or around June 2019.

**The Defendant and a Relevant Individual**

16. Defendant EMORY MATTHEWS was a resident of Farmington Hills, Michigan. EMORY MATTHEWS was a managing employee of New Beginnings, and his work included that of an administrator, the direct and indirect handling of day-to-day operations, patient transportation, and patient recruitment and enrollment. EMORY MATTHEWS further exercised operational and managerial control over New Beginnings, including the authority to handle personnel issues and fire employees.

17. In or around October 2019, EMORY MATTHEWS pleaded guilty to conspiracy to solicit and receive health care kickbacks and bribes in exchange for Medicare beneficiary referrals stemming from his operation of New Beginnings and Oakview, in violation of 18 U.S.C. § 371. As part of his plea agreement, EMORY MATTHEWS agreed and acknowledged that he would be excluded from Medicare, Medicaid, and all federal health programs, not including his right to apply for and receive benefits as a beneficiary.

18. On or about June 29, 2023, a judgment was entered against EMORY MATTHEWS sentencing him, in part, to three years' supervised release, beginning July 5, 2023, a condition of which was that he "not commit another federal, state, or local crime."

19. As a result of his conviction, on or about August 20, 2024, EMORY MATTHEWS was excluded from submitting or causing claims to be submitted to federal health care programs, including Medicare, for items or services he furnished, ordered, or prescribed, including services that did not directly involve patient care, regardless of whether he received payment directly from any federal health care program or whether payments were received by an employer.

20. Yolanda Matthews, the wife of Defendant EMORY MATTHEWS, was a resident of Farmington Hills, Michigan; was the President, Treasurer, Secretary, and Director of New Beginnings; and was listed as an owner and the sole signatory on the bank account into which Medicare reimbursements to New Beginnings were deposited.

21. Yolanda Matthews enrolled New Beginnings with Medicare in or around 2018, listing herself as the owner, managing employee, CEO, and authorized official.

## COUNT 1
## Conspiracy to Commit Health Care Fraud
## (18 U.S.C. § 1349)
## EMORY MATTHEWS

22. Paragraphs 1 through 21 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

23. From approximately in or around January 2020, and continuing through in or around June 2025, the exact dates being unknown to the Grand Jury, in Wayne and Oakland Counties, in the Eastern District of Michigan, and elsewhere, EMORY MATTHEWS did voluntarily and knowingly combine, conspire, confederate, and agree with Yolanda Matthews and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

24. It was the purpose of the conspiracy for EMORY MATTHEWS and his co-conspirators, including Yolanda Matthews, to unlawfully enrich themselves and

others by, among other things: (a) submitting and causing the submission of false and fraudulent claims for individual and group psychotherapy services to Medicare that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, and (iii) not provided as represented; (b) concealing and causing the concealment of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds of the fraud, and EMORY MATTHEWS's involvement as a managing employee in the operation of New Beginnings; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others and to further the fraud.

**Manner and Means of the Conspiracy**

25. The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

26. In or around September 2018, Yolanda Matthews, on behalf of New Beginnings, certified to Medicare that she would comply with all Medicare rules and regulations, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare.

27. Yolanda Matthews enrolled New Beginnings as a Medicare provider and was required to abide by all Medicare rules and regulations and federal laws, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare.

28. EMORY MATTHEWS, despite agreeing to an exclusion from Medicare due to his guilty plea to conspiracy to solicit and receive health care kickbacks and bribes, and despite actually being excluded from Medicare, agreed with Yolanda Matthews to conduct and assist with the administration at New Beginnings, including the direct and indirect handling of day-to-day operations, patient transportation, and patient recruitment and enrollment, and to assist with the fraudulent scheme alleged herein.

29. EMORY MATTHEWS, along with Yolanda Matthews, agreed to conceal and did conceal from Medicare EMORY MATTHEWS' role as a managing employee at New Beginnings, and intentionally and deliberately failed to disclose both his 2019 conviction and his 2024 exclusion from Medicare, despite Medicare rules requiring New Beginnings to disclose all managing employees and all adverse legal actions, including convictions and Medicare exclusions, for managing employees.

30. As a convicted felon and excluded individual, had EMORY MATTHEWS' involvement as a managing employee at New Beginnings been disclosed to Medicare, Medicare would have terminated New Beginnings enrollment and would not have paid any claims it submitted for reimbursement.

31. Beginning in or around January 2020, and continuing through in or around June 2025, EMORY MATTHEWS, Yolanda Matthews, and others submitted

and caused the submission of false and fraudulent claims purporting that individual and group psychotherapy was being provided to Medicare beneficiaries by New Beginnings personnel when, in fact: (a) the individual and group psychotherapy services were not provided at all; (b) the individual and group psychotherapy services were not provided as represented; and/or (c) the individual and group psychotherapy services were ineligible for reimbursement from Medicare.

32. EMORY MATTHEWS, Yolanda Matthews, and others submitted and caused the submission of false and fraudulent claims to Medicare purporting that individual and group psychotherapy was provided to Medicare beneficiaries at New Beginnings when, in fact, the beneficiaries were receiving inpatient treatment at hospitals on the same dates and could not have received individual and group psychotherapy at New Beginnings.

33. EMORY MATTHEWS, Yolanda Matthews, and others submitted and caused the submission of false and fraudulent claims to Medicare purporting that individual and group psychotherapy was provided to Medicare beneficiaries at New Beginnings when, in fact, the Medicare beneficiaries had died before the dates for which services were billed to Medicare by and through New Beginnings.

34. EMORY MATTHEWS, Yolanda Matthews, and others submitted, and caused the submission, of false and fraudulent claims to Medicare purporting that individual and group psychotherapy was provided to Medicare beneficiaries by

specific Licensed Master Social Workers ("LMSWs") when, in fact, those LMSWs were no longer employed by New Beginnings and/or did not provide the services billed on the submitted claims.

35. From in or around January 2020, and continuing through at least June 2025, EMORY MATTHEWS, Yolanda Matthews, and others submitted and caused the submission of false and fraudulent claims to Medicare of at least $4.75 million for services that were medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

36. EMORY MATTHEWS, Yolanda Matthews, and others personally profited from their participation in the scheme, directly or indirectly, by receiving fraud proceeds for the personal use and benefit of themselves and others.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2–4**
**Health Care Fraud**
**(18 U.S.C. §§ 1347 and 2)**
**EMORY MATTHEWS**

37. Paragraphs 1 through 21 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

38. From in or around January 2020, and continuing through June 2025, the exact dates being unknown to the Grand Jury, in Wayne and Oakland Counties, in the Eastern District of Michigan, and elsewhere, defendant, EMORY MATTHEWS,

in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

**Purpose of the Scheme and Artifice**

39. Paragraph 24 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

**The Scheme and Artifice**

40. Paragraphs 25 through 36 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution of the Scheme and Artifice**

41. On or about the dates specified below, in the Eastern District of Michigan and elsewhere, EMORY MATTHEWS, in connection with the delivery of and payment for health care benefits, items, and services, and aided and abetted

by, and aiding and abetting YOLANDA MATTHEWS and others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, with each execution set forth below forming a separate count:

| Count | Beneficiary | Approx. Date of Service | Approx. Date of Claim | Description of Items Billed | Approx. Amount Billed |
|---|---|---|---|---|---|
| Count 2 | E.H. | 10/26/2021 | 10/28/2021 | Group Psychotherapy | $45.00 |
| Count 3 | E.H. | 12/12/2022 | 12/13/2022 | Psychotherapy, 45 minutes | $125.00 |
| Count 4 | E.H. | 5/16/2023 | 5/17/2023 | Group Psychotherapy | $45.00 |

Each in violation of 18 U.S.C. §§ 1347 and 2.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461)**

42. The allegations contained in Counts 1 through 4 of this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendant EMORY MATTHEWS, pursuant to the provisions of

Title 18, United States Code, Section 982 and Title 28, United States Code, Section 2461.

43. Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 4 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

44. Money Judgment: Property subject to forfeiture includes, but is not limited to a forfeiture money judgment equal to total amount of forfeitable proceeds as a result of defendant's violations as alleged in Counts 1 through 4 of this Indictment.

45. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of EMORY MATTHEWS, up to the value of such property.

THIS IS A TRUE BILL.

*s/Grand Jury Foreperson*
Grand Jury Foreperson

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
U.S. Department of Justice

JOHN NEAL
Chief, Anti-Corruption Unit
United States Attorney's Office
Eastern District of Michigan

*s/Jeffrey A. Crapko*
JEFFREY A. CRAPKO
Trial Attorney
Health Care Fraud Section
National Fraud Enforcement Division
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 445-9832
Email: Jeffrey.Crapko@usdoj.gov

Dated: September 3, 2026

| United States District Court<br>Eastern District of Michigan | **Criminal Case C(** |
|---|---|

Case: 2:26-cr-20591
Assigned To : Goldsmith, Mark A.
Referral Judge: Grand, David R.
Assign. Date : 9/3/2026
Description: SEALED MATTER (LH)

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to co**

| **Companion Case Information** | **Companion Case Number:** 26-cr-20377 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Brandy R. McMillion |
| ☒ **Yes** ☐ **No** | **AUSA's Initials:** |

**Case Title:** USA v. Emory Matthews

**County where offense occurred :** Wayne County

**Check One:** ☒**Felony** ☐**Misdemeanor** ☐**Petty**

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ____________ **Judge:** ____________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Emory Matthews | 18 U.S.C. § 1349<br>18 U.S.C. § 1347<br>18 U.S.C. § 2<br>18 U.S.C. § 982 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 3, 2026
Date

s/Jeffrey A. Crapko

Jeffrey A. Crapko, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 445-9832
Fax:
E-Mail address: Jeffrey.Crapko@usdoj.gov
Attorney Bar #: P78487

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.